IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TINA ALVAREZ,

    Plaintiff,

  v.

UNUM LIFE INSURANCE COMPANY OF AMERICA, PRIMED MANAGEMENT CONSULTING SERVICES, INC. LONG TERM DISABILITY PLAN,

    Defendants.

No. C 07-00974 WHA

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; CASE MANAGEMENT ORDER**

## INTRODUCTION

In this ERISA benefits action, defendants move for summary judgment. This order finds that plaintiff has demonstrated that triable issues of material fact exist in the administrative record. For the below-stated reasons, defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

The essential facts that follow are undisputed. Effective October 1, 1998, defendant Unum Life Insurance Company of America issued its Policy No. 505663 011 to PriMed Management Consulting Services, Inc. (AR 43–88). Plaintiff Tina Alvarez was an employee of PriMed, where she worked as a service-center coordinator from 1992 to 2003 (AR 31).

The Policy insured short-term and long-term disability benefits provided to PriMed employees by the other defendant in this action, PriMed Management Consulting Services Long

Term Disability Plan. The policy that the plan chose to purchase from Unum contained the following relevant provisions (AR 44, 52, 63–64, 65–66, 83)

- "The policy is delivered in and is governed by the laws of the governing jurisdiction and to the extent applicable by the Employee Retirement Income Security Act of 1974 ("ERISA") and any amendments."

- "When making a benefit determination under the policy, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy."

- "We may request that you send proof of continuing disability indicating that you are under the regular care of a physician. This proof, provided at your expense, must be received within 45 days of a request by us."

- "In some cases, you will be required to give Unum authorization to obtain additional medical information and to provide non-medical information as part of your proof of claim, or proof of continuing disability. Unum will deny your claim, or stop sending you payments, if appropriate information is not submitted."

- "HOW MUCH WILL UNUM PAY YOU IF YOU ARE DISABLED?

    We will follow this process to figure your payment:

    1. Multiply your monthly earnings by 66.6667%.

    2. The maximum monthly benefit is $10,000.

    3. Compare the answer from item 1 with the maximum monthly benefit. The lesser of these two amounts is your gross disability payment.

    4. Subtract from your gross disability payment any deductible sources of income.

    The amount figured in item 4 is your monthly payment."

- "WHAT ARE DEDUCTIBLE SOURCES OF INCOME?"

    Unum will subtract from your gross disability payment the following deductible sources of income:
    \*          \*          \*
    (7) The amount that you receive from a third party (after subtracting attorney's fees) by judgment, settlement or otherwise.

    With the exception of retirement payments, Unum will only subtract deductible sources of income which are payable as a result of the same disability."

2

- "DISCRETIONARY ACTS

   In exercising its discretionary powers under the Plan, the Plan Administrator, and any designee (which shall include Unum as a claims fiduciary) will have the broadest discretion permissible under ERISA and any other applicable laws, and its decisions will constitute final review of your claim by the Plan. Benefits under this Plan will be paid only if the Plan Administrator or its designee (including Unum), decides in its discretion that the applicant is entitled to them."

On June 1, 2001, plaintiff Tina Alvarez, then 36-years old, was involved in a motorcycle accident indirectly caused by a CalTrans vehicle. As a result of the accident, plaintiff allegedly suffered and continues to suffer from: (1) a cerebral concussion/vestibular concussion, post-concussive syndrome, chronic debilitating migraine headaches; (2) menstrual hemorrhagia, secondarily resulting in infertility; (3) a separated left shoulder, with surgery on December 26, 2001; (4) a left knee injury requiring eventual surgery; and (5) multiple contusions and abrasions, cervical sprain, chronic myofascial pain syndrome (AR 619, 621–24).

In early October 2004, Unum received notice from plaintiff's counsel that plaintiff had suffered injury on June 1, 2001. The attorney indicated that plaintiff also had a pending lawsuit in Alameda County Superior Court, *Tina Alvarez v. State of California,* Case No. HG 03 098340 (AR 17–18).

Also in October 2004, plaintiff filed a claim for benefits with Unum, which included an employee's statement, an employer's statement from PriMed, and an attending physician's statement. The physician's statement stated that plaintiff had a cognitive disorder secondary to traumatic brain injury, general anxiety, and depression (AR 29–32).

After an investigation, Unum notified plaintiff's counsel in October 2005 that it had approved her claim for benefits. Unum reminded counsel of the policy provision stating that the amount received from a third party "by judgment, settlement or otherwise" (but subtracting attorney's fees) was a "deductible source of income" (AR 828).

In December 2005, plaintiff's counsel provided Unum with a copy of documents memorializing the settlement of *Alvarez v. State of California*. The release stated that the settlement included a payment of $400,000 to plaintiff and her attorneys, and a payment of

$350,000 to Metropolitan Life Insurance Company to purchase a structured annuity for plaintiff's benefit. Of the $400,000 payment, $82,986.96 went to plaintiff directly (AR 859, 62–63). The settlement documents did not identify whether the settlement was for plaintiff's medical care, lost wages, pain and suffering, or combination of those considerations.

By letter dated January 5, 2006, Unum forwarded plaintiff the initial benefit check for $32,909.09 for the period between March 16, 2003, through December 15, 2005 (AR 892–94). On January 19, Unum explained that the lump-sum settlement amount that she had received was being offset from the beginning of the claim through the maximum possible duration of the claim (AR 899-900).

In February 2006, Unum contacted plaintiff's counsel, stating that Unum needed additional information to determine plaintiff's continued eligibility for benefits. Unum cited the policy provision allowing Unum to request confirmation that a claimant continued to be under physician's care and to request additional information (AR 908–09).

Plaintiff's counsel wrote to Unum in April 2006, objecting to Unum's offset of the "entire" amount of plaintiff's settlement with CalTrans. Plaintiff's counsel argued that the California Insurance Code did not allow coordination of benefits with third-party liability coverage. Counsel also contended that the policy, read as a whole, clearly intended only to offset for other types of disability or loss-of-income benefits. Counsel proposed that an offset of 10% of plaintiff's net recovery under the settlement would be appropriate. Additionally, counsel objected to Unum's request for periodic medical updates (AR 946–49).

Plaintiff's counsel had a phone call with an Unum representative on May 6, 2006. Unum sent a letter on May 10, 2006, clarifying the offset calculations. Plaintiff's counsel continued to assert that Unum's offset was improper. Unum responded that it was not offsetting the portions of the settlement that compensated plaintiff for legal and medical fees, but would offset the balance of the settlement in accordance with the plan terms. Counsel was also advised of plaintiff's right to appeal the determination (AR 974, 979–80, 988, 990–92).

Plaintiff appealed the benefits determination on July 25, 2006. By letter dated August 22, 2006, Unum informed counsel that it had completed an appellate review of the file. Unum

stated that the $82,929.96 which plaintiff received directly out of the initial $400,000 was considered deductible income under the terms of the policy (AR 1044–47). In the same letter, in response to counsel's argument that plaintiff's settlement included non-disability-related claims which should not have been offset, Unum stated (AR 1047):

> In summary, the Settlement Agreement is a general release, which does not specify that 10 percent of the disbursement was for loss of income. Although we understand that you continue to disagree with the [amount] of the offset being applied, based on our review of Ms. Alvarez's file on appeal, it remains our position that we are entitled to apply the entire net amount received from her third party settlement and that the appropriate amount is being deducted from her gross monthly disability payments.

In November 2006, Unum wrote to plaintiff's counsel requesting the names of her current treaters and a list of her current medications. Counsel responded that Unum's requests for medical information were "becoming unreasonable and intolerable" (AR 1096, 1105–06).

The amended complaint herein asserts claims against both Unum and the plan. *First*, it alleges that the policy improperly offset the entire amount of plaintiff's settlement with the State of California on her personal injury claim. *Second*, it alleges that the requests for medical reports is unreasonable and requests declaratory relief to prohibit further reporting requests. Defendants filed the entire administrative record on June 26, 2007. They concurrently filed a motion for summary judgment on all claims.

**ANALYSIS**

Under Federal Rule of Civil Procedure 56, summary judgment is proper where the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." It is not the task of the district court to scour the record in search of a genuine issue of triable fact. The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). A genuine dispute as to a material fact exists if there is sufficient evidence for a reasonable finder of fact to return a verdict for the nonmoving party. On summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477

5

U.S. 242, 248, 255 (1986). Review here will be limited to the administrative record. In the Ninth Circuit, "a district court should not take additional evidence merely because someone at a later time comes up with new evidence and in most cases only the evidence that was before the plan administrator should be considered." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1091 (9th Cir. 1999) (quotations and alterations omitted).

### 1. UNUM'S BENEFIT CALCULATION.

#### A. Standard of Review.

The Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard *unless* the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989). If, however, the plan "*does* confer discretionary authority as a matter of contractual agreement, then the standard of review shifts to abuse of discretion." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (en banc).

The plan here fits squarely within the *Firestone* exception. The plan here states: "When making a benefit determination under the policy, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy" (AR 44). Because "the words give [Unum] the authority to interpret the plan's terms and to make final benefits determinations, discretion is unambiguously vested in [Unum]." *Abatie*, 458 F.3d at 964. Under *Abatie* and *Firestone*, this order holds that the inquiry must be whether Unum abused its discretion in this case.

Plaintiff cites no case law to rebut this holding. Plaintiff does, however, note a so-called "California Settlement Agreement" between the California Department of Insurance and Unum (Req. for Judicial Notice Exh. B). In the California Settlement Agreement, Unum agreed that any language having the effect of a "discretionary authority provision" would not be applied to any new policies issued in California after October 3, 2005. Plaintiff also cites to a "Notice to Withdraw Approval and Order for Information" issued by the Department in February 2004 to all disability insurers doing business in California (Request for Judicial Notice Exh. A). The

6

1  notice withdrew the Department's approval of discretionary clauses in disability insurance
2  policies that "purport to confer on the insurer discretionary authority to determine eligibility for
3  benefits and to interpret the terms and provisions of the policy." Plaintiff suggests that this
4  means that an abuse-of-discretion standard should not apply here because plaintiff requested a
5  reassessment of her benefits determination on July 25, 2006, after both the California
6  Settlement Agreement and notice.

7  Plaintiff's argument is unpersuasive. "Virtually every court that has addressed the
8  California [Department of Insurance's] Notice and its impact on the standard of review in
9  ERISA cases has rejected the argument that the Notice entitles plaintiffs to a *de novo* standard
10 of review." *Lundquist v. Continental Cas. Co.*, 394 F. Supp. 2d 1230, 1246 (C.D. Cal. 2005)
11 (Olguin, J.) (citing cases); *see also Moskowite v. Everen Capital Corp.*, No. C 03 4666 MMC
12 (MED), 2005 WL 1910941, at *5 (N.D. Cal. Aug. 10, 2005) (Chesney, J.) ("In any event, the
13 DOI has explained that its notice does not effect policies already sold.") (quotations omitted).
14 The agreement and notice only apply *prospectively* to *new* policies issued. Here, the policy
15 became effective on October 1, 1998. As to policies, such as this one, that predated the
16 agreement and notice, this order finds no ground on which to deviate from other courts' rulings.
17 An abuse-of-discretion standard is appropriate where, as here, the policy was already in
18 existence at the time of the notice and California Settlement Agreement. Accordingly, none of
19 the department's rulings deprived Unum of discretion in this case.

20              **B.    Whether Unum Abused its Discretion.**

21 In the Ninth Circuit, ERISA plan administrators "abuse their discretion if they render
22 decisions without any explanation, or construe provisions of the plan in a way that conflicts
23 with the plain language of the plan." *Taft v. Equitable Life Assur. Soc.*, 9 F.3d 1469, 1472 (9th
24 Cir. 1993). "[A]n administrator also abuses its discretion if it relies on clearly erroneous
25 findings of fact in making benefit determinations." *Id.* at 1473.

26 "[E]mployers have large leeway to design disability and other welfare plans as they see
27 fit." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833 (2003). The Supreme Court
28 has held that offset provisions do not violate ERISA and are enforceable by federal law. *See*

*Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 521–26 (1981). The plan here stated that the amount received by a claimant "from a third party (after subtracting attorney's fees) by judgment, settlement or otherwise" would be deducted from the benefit payment. The provision went on to provide that "[w]ith the exception of retirement payments, Unum will only subtract deductible sources of income which are payable as a result of the same disability" (AR 65–66). The validity of this aspect of the plan is not disputed.

Plaintiff contends that Unum abused its discretion by offsetting the entire amount (less attorney's fees and costs) of her third-party settlement with the State of California from her plan benefits. This order holds that plaintiff has raised triable issues of material fact as to whether Unum abused its discretion. Specifically, plaintiff has raised a question whether Unum improperly discounted the entire annuity she is entitled to receive under the settlement for the remainder of her life. Under the plan, her benefits expire at age 65. The annuity under the settlement, however, does not end at age 65. There is a question of material fact regarding whether Unum abused its discretion when it discounted the entire amount of the settlement's annuity payments from her benefits that expire at age 65.

Additionally, plaintiff provided evidence that the settlement compensated plaintiff for other injuries (in addition to the injuries suffered because of her motorcycle accident) — such as sterility and hearing loss — which could not be considered the "same disability" under the plan. Those injuries were not disabling. Her sterility did not even result from the subject accident. These claims, which made up a portion of her third-party settlement, are outside the scope of the plan's coverage. There is a question of material fact whether Unum abused its discretion when it offset the entire amount plaintiff received under the settlement.

### 2. REQUIREMENT OF PROOF OF CONTINUING DISABILITY.

Plaintiff also seeks declaratory relief exempting her from the requirement that she continue to prove her eligibility for benefits. Plaintiff does not allege that she is currently unable to provide proof of her disability. Rather, her complaint alleges that she "fears that, due to her disability (and the fact that she will not always have legal counsel to assist her), that she

will be unable to meet Defendant's demands, resulting in the loss of her disability benefits" (Am. Compl. ¶ 28).

The policy here states that Unum "may request that you send proof of continuing disability indicating that you are under the regular care of a physician. This proof, provided at your expense, must be received within 45 days of a request by us" (AR 52). In the complaint, plaintiff cited neither any contradictory policy provision nor any legal authority that would permit nullification of the relevant provision. This order finds that plaintiff's "fears" themselves are an insufficient basis on which to declare as a matter of law that plaintiff need not comply with Unum's requests for information. Indeed, defendants correctly point out that courts may not apply equitable principles that contradict express policy provisions. *See Davidian v. S. Cal. Meat Cutters Union and Food Employees*, 859 F.2d 134, 135–36 (9th Cir. 1988).

In the opposition to the motion for summary judgment, plaintiff raised a new theory for the first time. Plaintiff now contends that the plan provisions violate Title III of the Americans with Disabilities Act. The complaint itself does not include an ADA claim. That threshold problem aside, however, the ADA is not an adequate ground on which to grant plaintiff the requested relief.

The specific provision of the ADA cited by plaintiff states the general rule that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182(a). The Ninth Circuit has unequivocally held that employee benefit plans are not covered by Title III of the ADA: "A benefit plan offered by an employer is not a good offered by a place of public accommodation." *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 10104, 1115 (9th Cir. 2000). The ADA is not a ground for providing the declaratory relief plaintiff seeks. Summary judgment must be granted on this claim.

9

### 3. WHETHER UNUM IS A PROPER PARTY.

Unum contends that the only proper defendant here is the plan because Unum is the claims administrator and not the plan administrator. *See Everhart v. Allmerica Fin. Life Ins. Co.*, 275 F.3d 751, 756 (9th Cir. 2001). In *Everhart*, the Ninth Circuit found "no reason to depart from the established precedent of this circuit, and of every other circuit that has expressly considered this issue, that § 1132(a)(1)(B) does not permit suits against a third-party insurer to recover benefits when the insurer is not functioning as the plan administrator." *Id.* at 756. The court of appeals so held over Judge Reinhardt's dissenting comment that "[t]o leave an ERISA beneficiary such as Everhart without a remedy against the very party that has deprived her of her interest in her late husband's ERISA plan by refusing to pay the benefits she seeks to recover would be directly contrary to the stated policy of the statute." *Id.* at 761 (Reinhardt, J., dissenting).

The plan administrator here was plaintiff's employer, PriMed Management Consulting Services. Unum was the claims administrator. The dismissal of Unum is compelled by *Everhart*.

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's request for judicial notice of the California settlement agreement and notice is also **GRANTED.** Additionally, plaintiff's request for discovery is **GRANTED**.

The **FINAL PRETRIAL CONFERENCE** shall be at **2:00 P.M.** on **JANUARY 28, 2008**. A **JURY TRIAL** shall begin on **FEBRUARY 11, 2008**, at **7:30 A.M.**, in Courtroom 9, 19th Floor, 450 Golden Gate Avenue, San Francisco, California, 94102. The trial schedule and time limits shall be set at the final pretrial conference. Although almost all trials proceed on the date scheduled, it may be necessary on occasion for a case to trail, meaning the trial may commence a few days or even a few weeks after the date stated above, due to calendar congestion and the need to give priority to criminal trials. Counsel and the parties should plan accordingly, including advising witnesses.

Counsel may not stipulate around the foregoing dates without Court approval. While the Court encourages the parties to engage in settlement discussions, please do not ask for any extensions on the ground of settlement discussions or on the ground that the parties experienced delays in scheduling settlement conferences, mediation or ENE. The parties should proceed to prepare their cases for trial. No continuance (even if stipulated) shall be granted on the ground of incomplete preparation without competent and detailed declarations setting forth good cause.

To avoid any misunderstanding with respect to the final pretrial conference and trial, the Court wishes to emphasize that all filings and appearances must be made — on pain of dismissal, default or other sanction — unless and until a dismissal fully resolving the case is received. It will not be enough to inform the clerk that a settlement in principle has been reached or to lodge a partially executed settlement agreement or to lodge a fully executed agreement (or dismissal) that resolves less than the entire case. Where, however, a fully-executed settlement agreement clearly and fully disposing of the entire case is lodged reasonably in advance of the pretrial conference or trial and only a ministerial act remains, the Court will arrange a telephone conference to work out an alternate procedure pending a formal dismissal.

**IT IS SO ORDERED.**

Dated: August 14, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE